IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ATD CORPORATION, *et al.*,[1] ) | Case No. 18-12221 (KJC) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |
| ) | Re: Docket Nos. 11, 101, 225 |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED
THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, (D) PERFORM
INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Final Order"): (a) authorizing the Debtors to (i) continue to operate their Cash Management System, (ii) pay any undisputed prepetition or postpetition amounts outstanding on account of the Bank Fees, (iii) maintain existing Business Forms in the ordinary course of business, (iv) continue to perform the Intercompany Transactions consistent with historical practice, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, include: ATD Corporation (3683); Accelerate Holdings Corp. (0528); American Tire Distributors Holdings, Inc. (6143); American Tire Distributors, Inc. (4594); Rubbr Automotive Services, LLC (3334); The Hercules Tire & Rubber Company (3365); Terry's Tire Town Holdings, Inc. (7464); Tire Pros Francorp (1361); and Hercules Asia Pacific, LLC (2499). The location of the Debtors' service address in these chapter 11 cases is 12200 Herbert Wayne Court, Suite 150, Huntersville, North Carolina 28078.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

February 29, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth in this Final Order.

2. The Debtors are authorized to: (a) continue operating the Cash Management System, substantially as identified on **Exhibit 1** attached hereto and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) maintain existing Business Forms; and (d) continue to perform Intercompany Transactions consistent with historical practice.

3. The Debtors are authorized to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date without the need to comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Operating Guidelines; (b) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds

2

in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (e) pay the Bank Fees, including any prepetition amounts, and any ordinary course Bank Fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that once the Debtors' preprinted correspondence, Business Forms (including letterhead) and existing checks have been used, the Debtors shall, when reordering, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all such documents; and *provided further*, that with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession."

4. Any postpetition fees, costs, charges and expenses, including Bank Fees, or charge-backs payable to the Cash Management Banks that are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

5. For Cash Management Banks that have signed a Uniform Depository Agreement with the U.S. Trustee, all Bank Accounts with such Cash Management Banks are deemed to satisfy Section 345(b) of the Bankruptcy Code.

6. The Debtors are authorized to continue using the Fuel Cards and the Fuel Card Program and pay any undisputed prepetition amounts in connection therewith.

7. The Debtors are authorized to continue using vPayment and pay any prepetition amounts in connection therewith in the ordinary course of business consistent with prepetition practices.

8. The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without

- interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.  No bank shall incur, and each bank is hereby released from, any liability for relying upon any Debtor's instruction as to which checks, drafts, wire transfers or ACH transfers should be honored or dishonored or for such bank's inadvertence in honoring any check, draft, wire transfer or ACH transfer at variance from a Debtor's instructions, unless such inadvertence constituted gross negligence or willful misconduct on the part of such bank.  Each Debtor and each Cash Management Bank are authorized to continue to perform pursuant to the terms of any pre-petition agreement that exists between them relating to any Bank Accounts or other cash management services except to the extent otherwise expressly provided in this Final Order, and

- the parties to such agreements shall continue to enjoy the rights, benefits, liens, offset rights, privileges and remedies afforded them under such agreements except to the extent expressly modified by the terms of this Final Order or any order approving the Debtors' use of cash collateral and/or any postpetition financing facilities (the "DIP Order").  Notwithstanding anything to the contrary in this Final Order, (i) no bank shall be obligated to extend credit to any Debtor or honor any check or other payment item drawn on a Bank Account at such bank unless there are sufficient and fully collected funds in such Bank Account, (ii) payments made by the Debtors pursuant to the authority granted in this Final Order must be in compliance with, and shall be subject to, the requirements imposed on the Debtors under any DIP Order, and (iii) to the extent there is any inconsistency between the terms of any DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

-

9. Subject to the requirements of paragraph 16 of this Final Order, the relief granted in this Final Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

10. All banks maintaining any of the Bank Accounts that are provided with notice of this Final Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts. Each of the Debtors' banks is otherwise authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for all checks drawn on the Debtors' account.

11. Each of the Debtors' banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for all Bank Fees and checks or other items deposited in one of the Debtors' accounts with such banks prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date.

12. The Cash Management Banks are authorized, without further order of this Court, to debit all applicable fees and expenses associated with the Debtors' Cash Management System and cash management services rendered to the Debtors, whether arising prepetition or postpetition from the applicable Bank Accounts consistent with historical practice, without interruption, and in the usual and ordinary course of business, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other

returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

13. Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors should be honored or dishonored pursuant to any order of this Court, whether or not such checks, drafts, wires, or other transfers are dated or made prior to, on, or subsequent to the Petition Date. Notwithstanding anything to the contrary contained in this Final Order, no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors; (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

14. To the extent any other order is entered by the Court directing Cash Management Banks to honor checks, drafts, wires, or other transfers made, drawn, or issued in payment of prepetition or postpetition claims, the obligation to honor such items shall be subject to this Final Order.

15. Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions;

provided that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

16. Subject to the DIP Order and the documentation in respect of any such postpetition financing facilities and/or use of cash collateral (the "DIP Documents"), the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, including, without limitation, the opening of any new bank accounts and the closing of any existing bank accounts and the entry into any ancillary agreements, including new deposit account control agreements, so long as (a) any such new account is with a bank that is (i) insured with the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation and (ii) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees, (b) the Debtors provide ten calendar days' notice to the U.S. Trustee and counsel to the Prepetition Agents and the DIP Agents of the opening or closing of any such account or any changes in Cash Management Systems, and (c) any such changes to the Cash Management System and procedures related thereto are not prohibited by the terms of the DIP Order or the DIP Documents.

17. Subject to the terms hereof, the Debtors are authorized, in the ordinary course of business, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate.

18. The Cash Management Banks are authorized to follow any instruction of the DIP Agent pursuant to any applicable blocked account or control agreement with respect to the disposition of any Bank Accounts (and all deposits therein) maintained with such Cash Management Bank following the exercise of any remedies of such lender in accordance with the DIP Documents.

19. All postpetition payments from a Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

20. In connection with the Intercompany Transactions, the Debtors shall (a) continue to maintain current, accurate, and detailed records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, and properly recorded on intercompany accounts and (b) provide monthly reports of Intercompany Transactions to the (i) Office of the U.S. Trustee; (ii) counsel to the DIP Agents; (iii) counsel to the advisors to the DIP FILO Lenders and Consenting Noteholders; (iv) counsel to the ad hoc term lender committee; and (v) proposed counsel to the Official Committee of Unsecured Creditors.

21. All intercompany transfers made by a Debtor to a non-Debtor foreign affiliate will be included in the Debtors' Monthly Operating Reports. Notwithstanding the foregoing, the U.S. Trustee's rights are reserved with respect to calculation of quarterly fees under 28 U.S.C. § 1930(a)(6).

22. The Debtors shall (i) provide reasonable notice to the U.S. Trustee if the daily balance in any Paypal account exceeds $75,000 and (ii) include detailed Paypal account statements in the Debtors' Monthly Operating Reports.

23. Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability or perfection of any security interest or lien, in favor of any person or entity, that existed as of the Petition Date.

24. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

25. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

26. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

27. Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees payable under 28 U.S.C. § 1930(a)(6) based on the disbursements of (or on behalf of) each Debtor regardless of which entity actually makes such disbursements.

28. Notwithstanding the relief granted in this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to any order authorizing use of cash collateral.

29. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b)

30. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

31. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

32. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

33. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: Oct 24, 2018
Wilmington, Delaware

The Honorable Kevin J. Carey
United States Bankruptcy Judge