# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ATD CORPORATION, *et al.*,[1] | ) Case No. 18-12221 (KJC) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: Docket Nos. 13, 102, 227 |

## FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"): (a) authorizing, but not directing, the Debtors to pay Critical Vendor Claims up to the Critical Vendor Cap; and (b) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration and Vendor Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, include: ATD Corporation (3683); Accelerate Holdings Corp. (0528); American Tire Distributors Holdings, Inc. (6143); American Tire Distributors, Inc. (4594); Rubbr Automotive Services, LLC (3334); The Hercules Tire & Rubber Company (3365); Terry's Tire Town Holdings, Inc. (7464); Tire Pros Francorp (1361); and Hercules Asia Pacific, LLC (2499). The location of the Debtors' service address in these chapter 11 cases is 12200 Herbert Wayne Court, Suite 150, Huntersville, North Carolina 28078.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein on a final basis.

2. The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy prepetition amounts on account of Critical Vendor Claims; *provided*, that such payments shall not exceed $239.7 million in the aggregate (the "Critical Vendor Cap") unless otherwise ordered by the Court after notice and a hearing.

3. From and after the date of this Final Order and through the conclusion of these cases, the Debtors shall provide a matrix on a weekly basis to counsel to the Required Consenting Noteholders, counsel to the DIP Agent (as defined in the Interim Order), counsel to the Term Lender Committee (as defined in the Interim Order), and the professionals retained by the Official Committee of Unsecured Creditors (the "Committee" and, collectively with counsel to the Required Consenting Noteholders, DIP Agent, and Term Loan Lender Committee, the "Notice Parties") with (a) a list of any Critical Vendor Claims paid in conjunction with this Final Order, one week in arrears, (b) the claimant asserting the Critical Vendor Claim; (c) the amount of the Critical Vendor Claim; (d) the basis for the Critical Vendor Claim, including the estimated

amount of such Critical Vendor Claim that is entitled to priority under section 503(b)(9) of the Bankruptcy Code, if any, and the amount that is a general unsecured claim; and (e) whether the Critical Vendor has executed a Trade Agreement; *provided, however*, that the matrix shall be considered confidential and provided on a professionals' eye only basis; *provided, further*, that solely with respect to matrix provided to counsel to the Committee, the names of the Critical Vendors shall be redacted.

4. Notwithstanding anything to the contrary in this Final Order, the authority of the Debtors to make any payments, or otherwise take actions, under this Final Order is subject to the terms and conditions of the DIP Credit Agreement (as defined in the First Day Declaration) and the interim and final orders of this Court approving the financing provided thereunder, including, without limitation, that any such payments must comply with the DIP Budget under, and as defined in, the DIP Credit Agreement.

5. The form of Trade Agreement, substantially in the form attached to the Motion as **Exhibit C**, is approved in its entirety. The Debtors are authorized to enter into such Trade Agreements. The Debtors shall condition payment of Critical Vendor Claims upon the execution of a Trade Agreement.

6. Notwithstanding paragraph 5 of this Final Order, the Debtors may (a) upon consultation with the Required Consenting Noteholders (as defined in the RSA) and in their reasonable business judgement, negotiate, amend, or modify the form of Trade Agreement and (b) with the prior written consent of the Required Consenting Noteholders (not to be unreasonably withheld), decline to condition payment of Critical Vendor Claims upon the execution of a Trade Agreement.

7.     Except as otherwise provided in an executed Trade Agreement, if any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, product mix, availability, and other programs) in place prior to March 31, 2018 (collectively, the "<u>Customary Trade Terms</u>"), then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; *provided*, that such party shall be afforded reasonable opportunity to contest such request and any dispute between the Debtors and such party with respect to such payment shall be resolved by the Bankruptcy Court on an expedited basis; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

8.     Subject to paragraph 7 of this Final Order, any Critical Vendor that accepts payment from the Debtors on account of all or a portion of a Critical Vendor Claim pursuant to this Final Order shall be deemed to (a) agree to the terms and provisions of this Final Order and (b) have waived, to the extent so paid, Critical Vendor Claims, of any type, kind, or priority (including any reclamation claim), against the Debtors, their assets, and properties.

9. Except as provided in an executed Trade Agreement: (i) nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Critical Vendor; and (ii) the Debtors do not concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims.

10. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interests' right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interests' rights or under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Except as otherwise provided in an executed Trade Agreement, any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interests' rights to subsequently dispute such claim.

11. Subject to the terms of the Cash Management Order (as defined in the First Day Declaration), the banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

12. Subject to the terms of the Cash Management Order, the Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Critical Vendor Claims.

13. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

15. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

16. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: Oct 24, 2018
Wilmington, Delaware

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge